IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES SHELTON, | : |
| Plaintiff, | : No. 2:24-cv-04679-JP |
| v. | : |
| COMMITTEE FOR POLICE OFFICERS DEFENSE PAC | : |
| Defendant. | : |

**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

**I.      DEFENDANT'S RULE 12(B)(1) MOTION TO DISMISS**

If there is one thing Americans can agree on, it is their distaste for frivolous and manufactured lawsuits. In 1991, Congress passed the Telephone Consumer Protection Act ("TCPA") to protect legitimate consumers from intrusive telemarketing calls which invade their privacy. Congress did not anticipate, however, that the TCPA would be abused by a large number of professional litigants who invite calls for the sole purpose of manufacturing illegitimate lawsuits, often through express acts of fraud, and at the great expense of their victims, the general public, and our already overloaded judiciary. Professional Plaintiff James Shelton ("Shelton") is such a litigant who has previously been caught manufacturing lawsuits through deceit and even fraud. This Motion will show that Shelton lacks standing to bring this lawsuit which should be dismissed with prejudice per Rule 12(b)(1). In the alternative, this Motion requests that Shelton's claim for treble damages and frivolous claim for a federal injunction be dismissed per Rule 12(b)(6).

  A. **Legal Standards**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a court to dismiss a complaint for lack of subject matter jurisdiction. Such a motion may either be a "facial attack" which challenges jurisdiction on the face of the complaint or be a "factual attack" which brings in external information. *Travelers Cas. v. Copeland Corp. LLC*, Civil Action No. 22-cv-725, 2022 WL 18831493, at *3 (W.D. Pa. Nov. 30, 2022.) A factual attack "places the burden of proof on the plaintiff to show that jurisdiction does in fact exist" and therefore, "no presumptive truthfulness attaches to plaintiff's allegations. *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

The standards applicable to a Rule 12(b)(1) speaking motion differ greatly from the standards for ruling on a motion for summary judgment. *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 60 F.4th 481, 496 (9th Cir. 2023) (quoting *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Faced with a factual attack on subject matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56." *Id*. "No presumptive truthfulness attaches to plaintiff's allegations," and the existence of disputed material facts won't "preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*. When a 12(b)(1) motion makes a factual attack, a district court may "weigh and consider evidence outside of the pleadings." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000).

  B. **Relevant Factual and Procedural History**

Herein, Defendant show that Professional Plaintiff Shelton lacks standing to sue due to lack of a concrete and particularized injury. Because Shelton lacks injury, this Court lacks jurisdiction to hear Shelton's claim and his lawsuit should be dismissed with prejudice.

  1. **James Shelton's History of Abusive and Fraudulent Litigation.**

2

Born December 1995, James "Jamie" Shelton is a twenty-eight-year-old resident of King of Prussia, Pennsylvania and graduate of Case Western Reserve University. He started filing TCPA lawsuits in his early twenties and quickly became one of the most prolific abusers of the TCPA in the country. Though Shelton is not an attorney he received formal legal training from Evanns [sic] Collection law, which Shelton describes as a "premier collection law firm in Los Angeles, California" where Shelton, "acquired extensive experience collecting judgments in all 50 states, particularly Pennsylvania." Ex. A to Kane Decl.  Eventually, Shelton left Evanns and opened Final Verdict Solutions which is an *alter ego* of Shelton and serves as a front for his TCPA scheme. *Id.*

Several judges in the Eastern District of Pennsylvania ("EDPA") have expressed doubts about the legitimacy of Shelton's voluminous, and suspiciously identical, lawsuits. In 2020, Judge Joshua Wolson wrote that, "James Shelton has turned the private right of action under the TCPA into a business." *Jacovetti Law, P.C. v. Shelton,* No. 2:20-cv-00163-JDW, 2020 WL 5211034, at *1 (E.D. Pa. Sep. 1, 2020). Judge Alejandro Quiñones partially dismissed another Shelton lawsuit finding Shelton lacked standing to sue under § 227(c) for calls to his business phone line. *Shelton v. Target Advance LLC*, No. 18-2070, 2019 WL 1641353, at *5 (E.D. Pa. Apr. 16, 2019). Judge Quiñones Alejandro opined that Shelton may lack standing to bring any TCPA claim due to lack of genuine injury:

> [T]he record suggests that Final Verdict Solutions has the sole purpose of luring business-to-business telemarketers (such as Defendant) into calling the Phone Number which is held out to the world as a business telephone number, so that Plaintiff can bring TCPA actions against the telemarketers who call him. . . If the former is the case and the sole purpose of Final Verdict Solutions is to drum up TCPA litigation by inducing business-to-business robocalls, *Stoops* would appear to bar Plaintiff's claims since he likely has not suffered an injury-in-fact and his claims are not within the zone of interests the TCPA was enacted to protect. *Leyse*, 804 F.3d at 323 ("[s]omeone with a generalized interest in punishing telemarketers

> . . . would not qualify on that basis alone" as having "suffered the particularized injury required to maintain an action in federal court for a statutory violation."); *cf*. Susinno, 862 F.3d at 351 (holding that where the plaintiff allegedly suffered "nuisance and invasion of privacy" resulting from a single unsolicited prerecorded telephone call, her complaint asserts "the very harm that Congress sought to prevent," arising from prototypical conduct proscribed by the TCPA).

*Id.* at *5 (cleaned up).

### 2. Shelton Boasts About "Pillaging" Victims in a Leaked Audio Recording.

In his pleadings, Jamie Shelton paints himself as an ordinary, exasperated consumer who can't figure out why his many phone numbers[1] keep getting "unwanted" calls. In his lawsuit, Shelton pleads that the single call he received "harassed" him and "violated his privacy." (Doc. 1 ¶ 40.) Shelton, however, speaks very differently about these "unwanted" calls when he thinks no one is listening. "Pillaging them that's the point." Ex. B to Kane Decl. (Lawsuit Against James Shelton containing transcripts of purported Shelton audio recordings.) Ironically, Jamie Shelton, who earns a living secretly recording others, was apparently himself caught discussing his TCPA scheme with another professional TCPA plaintiff in a leaked audio recording. Far from expressing annoyance at TCPA violating calls, Shelton expresses excitement.

In the leaked transcript[2], Shelton describes his process of identifying "easy target[s]" to file lawsuits against and the probing investigations he performs into his hand selected victims. *Id.*

---

[1] It's no accident that Professional Plaintiffs receive so many "unwanted" calls. Professional Plaintiffs like Shelton commonly maintain a large and constantly changing reservoir of burner phones and burner phone numbers. *See Laccinole v. Int'l Union of Police Ass'ns*, 638 F. Supp. 3d 110, 115 (D.R.I. 2022) (dismissing a professional plaintiff who owned "at least twelve" phones for lack of standing.) The purpose of these phones is not to call friends or family but to farm calls intended for the number's previous owner. Upon information and belief, the following nine phone numbers all belong or have belonged to Jamie Shelton: 610-265-0724, 484-626-3942, 302-884-6909, 484-674-5485, 716-741-0205, 484-312-3300, 484-691-9983, 570-646-8541, (215)-XXX-XXXX.

[2] The transcript herein comes from *Jacovetti Law v. Shelton* which was publicly filed in the Eastern District of Pennsylvania and transcribed by Attorney Joshua Thomas and Veritext Legal

p. 9. Shelton even searches the home equity values for the personal residences owned by the officers and directors of his victims. *Id.* Shelton excitedly describes how he regularly sues people "individually" so that "if you own real property, I can put a lien against it or I can even take it if I want." *Id.* p. 9. Shelton, who himself is an owner of luxury Poconos real estate, becomes excited while imaging the equity in his victim's homes, saying, "that's a sizeable amount of equity that I could considerably take." *Id.* p. 10.

Not once does Shelton express concern or annoyance about the "unwanted" calls his lawsuits describe as "harassing." *Id.* To the contrary, Shelton apparently enjoys getting calls others find unwanted because Shelton earns a living through barratry: "Pillaging them that's the point." (*Id.* p. 21.) Shelton apparently enjoys being called by victims who drive "Mercedes" or live in "new house[s]." *Id.* Shelton reveals his belief that if someone has something he doesn't, "they can afford to pay me." *Id.*

> [Jamie Shelton]: I understand. That's like I research these people a lot before I even write them a demand letter because I want to know okay, do they own real property? Do they own bank accounts? They have money? How big is their company how many employees do they have all that side research that stuff in advance. And if there [sic] are small if they're driving a brand new Mercedes or a Lambo or something whether living in a brand new house, then they can afford to pay me . . .
>
> [Other caller]: What? Okay, you find the company they call you. I mean are you then going to say hey Craig. Ah Craig Cunningham or is other Rayburn whoever. Hey [other caller]. Here's an easy target.[3]

---

Solutions. Defendant is not, at this time, in possession of the purported audio recordings or original transcripts. Upon information and belief, these quotations from the *Jacovetti* filings accurately reflect audio recordings of Shelton and another TCPA plaintiff. For the sake of transparency, Defendant points out that Attorney Thomas has been the subject of professional discipline. To the best of Defendant's knowledge, Attorney Thomas' professional discipline is unrelated to the veracity of these transcripts.

[3] Craig Cunningham is another professional TCPA litigant and who has filed countless lawsuits. Here Shelton describes sharing information about "easy targets" to his co-conspirators, like Cunningham, who themselves file a barrage of barratry with Shelton's assistance. Shelton apparently speaks with Cunningham "every day" about their joint business venture. *Id.* p. 21.

[Jamie Shelton]: Oh yeah, absolutely, what we do is, not you in particular, what will we do is say, hey you these guys just paid me x number of dollars or hey you know I just collected a judgment against these I just say 20,000 dollars and you, any of you got any calls, yeah, sure have, let's go after them. Meanwhile, I know the person facts before I even, before I even filed a case and how much money they have.

[Jamie Shelton]: Here is the thing, here is the thing, like is, I sue the people individually and get individual the liability. So that's the first hurdle so even [if you] close your company up, but I'm going but I'm going to have a judgment against you personally and that's going that's going to mean that I can still level your personal account. If you own you real property, I can put a lien against it or I can even take it if I want if there's equity in it. I can take the house. I mean that there's a

[Other caller] Would you do that would you do that?

[Jamie Shelton]: Yeah. We're in [the] process of doing it to someone in Southern California right now, but they are scumbags. Know why I have to have Clear Choice credit for 10 bucks. You can run a it's $9.50 each. You can run you can pull a credit report Trans Union or Equifax. All you need to have a social, date of birth, address. It's very easy.

[Shelton goes on to apparently run a credit report for the other caller and discuss who he would assess the caller if he were one of Shelton's victims.]

[Jamie Shelton]: You don't have any expensive vehicles so I would say you're not rich by any means but if I had to judge it against you I mean 100% conclude against you and that would be sizeable amount of equity that I could considerably take if its really worth that much but that just the so that would be my analysis right.

Ex. B to Kane Decl. at 8-11 (some errors in original, cleaned up for readability.)

This transcript comes from a failed lawsuit against Shelton. *See generally* Ex. B to Kane Decl. The plaintiff, Jacovetti Law, was a Shelton victim who unsuccessfully counter sued him for RICO violations. *Id.* Unfortunately for Jacovetti, catching Shelton speaking like a want-to-be mafioso is not enough to sue him like one. Judge Wolson penned an order correctly calling the RICO suit a "dud" noting, that Shelton's "pecuniary approach to litigation might be unseemly, as the court has observed before. But it is not illegal. Certainly, it does not demonstrate that Mr. Shelton intends to defraud anyone." *Jacovetti Law, P.C. v. Shelton*, No. 2:20-cv-00163-JDW,

6

2020 WL 5211034, at *3 (E.D. Pa. Sept. 1, 2020). It's true that Jacovetti failed to state a RICO claim against Shelton. But Shelton has been caught using dishonest, even fraudulent, tactics to manufacture class action lawsuits before.

### 3. Shelton's Fraudulent Class Action Lawsuit Against Comcast Cable.

Shelton has been caught using fraud and deception to manufacture class action lawsuits before. In 2020, a twenty-four-year-old Shelton filed a class action lawsuit against Comcast Cable. During litigation, Comcast discovered that Shelton devised a scheme to manufacture a class action which was barred by an arbitration agreement. Comcast filed a motion to compel arbitration which was granted in an opinion by EDPA Judge Quiñones. *See Shelton v. Comcast Corp.*, No. 20-1763, 2021 WL 21403, at *2 (E.D. Pa. Jan. 21, 2021). The Court found that Shelton "knowingly exploit[ed]" Comcast's subscriber agreement and was "equitably estopped" from avoiding arbitration. *Id.* at *3.

Shelton's scheme was sophisticated and deceitful. Shelton was a Comcast Cable user for many years. At some point, he selected Comcast as his next litigation victim — presumably due to its large assets. The problem, however, was that Shelton's class action was barred by a binding arbitration agreement with Comcast. *Id.* at *5-6. In 2007, Shelton was given an opportunity to "opt-out" of the arbitration clause, but Shelton chose not to. *Id.* at *2 n.3. Thus, Shelton devised a scheme to fraudulently induce Comcast into starting a new service at a fake address, solely so Shelton could again avail himself of an arbitration "opt out" opportunity offered to new users. *See* Ex. C to Kane Decl. at 10) (Comcast's Granted Motion to Compel Arbitration.)

Shelton's scheme involved several affirmative acts of dishonesty which Defendant believes rises to the level of fraud. First, Shelton called Comcast and asked Comcast to set up cable services at his home, even though Shelton's home already enjoyed Comcast's services. Ex. C to Kane Decl. at 10. Comcast's systems flagged Shelton's duplicative request and denied it.

*Id.* Undeterred, Shelton then falsely represented he wanted new Comcast services on "Catfish Lane." *Id.* Unbeknownst to Comcast, the "Catfish Lane" address Shelton falsely represented was his belonged to another TCPA plaintiff, Danon J. Doyle.[4] *Id.* Shelton then accessed Comcast's website to "opt out" of the arbitration clause for the Catfish Lane account — but entered his true home address in the "opt out" form. *Id.* Shelton did this to falsely claim that the account associated with his true home address opted out of arbitration and proceed with his otherwise barred class action. Shelton knew that his lawsuit was illegitimate but filed it before this Court anyway. Comcast filed a motion to compel arbitration which was granted. *Comcast*, 2021 WL 214303, at *5-6. The Court found that Shelton was "equitably estopped from avoiding the arbitration" because Shelton "knowingly exploited" Comcast and its subscriber agreement. *Id.*

Shelton seeks to represent a class once again. But his well-documented history of depict, and even fraud, disqualifies him from acting as a fiduciary for a class. *Compare Weisman v. Darneille,* 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (holding that class representatives are fiduciaries "required to adhere to the highest standards of honesty and integrity") *with* Ex. B to Kane Decl. at 7, 21 (Shelton boasting that the "point" of his lawsuits is "pillaging" his victims.); *compare also Ash v. Brunswick Corp.,* 405 F. Supp. 234, 248 (D. Del. 1975) (courts consider a class representative's "honesty, conscientiousness and other affirmative personal qualities in determining whether [they] will fairly and adequately protect the interests of the class"), *with Comcast Corp,* 2021 WL 214303, at *5-6 (finding Shelton knowingly exploited the legal system to file a lawsuit he knew was barred by an arbitration agreement.)

---

[4] That Shelton has been accused of collaborating with other TCPA plaintiffs in multiple, unrelated, lawsuits lends credibility to the veracity of the *Jacovetti* transcripts.

Of course, if Shelton would devise a complex scheme to manufacture one class action, he would do it again. Defendant has reason to suspect that Shelton has engaged in similar tactics to bring this class action. Defendant therefore files this 12(b)(1) Motion to Dismiss and challenges Shelton to meet his burden to establish that he has standing.

  C. **<u>Shelton Bears the Burden to Establish that He Has Standing to Sue under § 227(b)</u>**.

Shelton's Complaint only asserts one cause of action under § 227(b) which prohibits calls using an automatic telephone dialing system ("ATDS")[5], an automatic, or a prerecorded voice. But Defendant has reason to believe that this alleged call, assuming *arguendo* it was made, would have been initiated with a live caller. This is important because a plaintiff cannot maintain a § 227(b) claim when a call is initiated with a live caller. *See* 47 U.S.C. § 227(b). It's well settled that the TCPA doesn't prohibit prerecorded messages that are first introduced by a live agent. *See Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 274 (3d Cir. 2013) (holding that live calls are permitted under the TCPA); *Moser v. FCC*, 46 F.3d 970, 972 (9th Cir. 1995) ("Under [§ 227(b)], prerecorded messages may be used only if a live operator introduces the message . . . all live solicitation calls . . . are permitted.") *see also Ashland Hosp. Corp. v. SEIU,* 708 F.3d 737, 741 (6th Cir. 2013) (finding more than five hundred live calls made to a hospital over two days did not violate the TCPA because they were initiated by live callers.")

Weary of aggressive and costly TCPA lawsuits, most callers exercise diligence to comply with the TCPA. In other words, the demand for TCPA violating calls by professional litigants far exceeds the actual supply. Shelton's complaint purports to recite the language of the alleged call *ver batim*, distinguishing the alleged caller's words in a unique font. *Compare* 47 U.S.C. § 227(b) *with* ECF No. 1 (Complaint) ¶ 27-8. Thus, it appears Shelton made an audio recording of

---

[5] The complaint doesn't appear to claim the alleged call was made with an ATDS.

the alleged call. If such a call was made to Shelton, and without admitting one was, Defendant has reason to believe it was initiated with a live caller and is not being accurately represented in this lawsuit. This belief is substantially bolstered by Shelton's history of manufactured litigation, particularly in *Comcast*.

Following the Supreme Court's decision in *Spokeo* the mere existence of a statutory right does not automatically establish standing to sue. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Therefore, if the alleged call was initiated by a live caller, then Shelton has no TCPA injury, and therefore no standing to sue under § 227(b). If Shelton has an audio recording of the alleged call Shelton must produce it to establish his standing to sue (or lack thereof) under § 227(b).

This is particularly necessary because Shelton's allegations about the call are vague. He claims that the call was "sent" with a pre-recorded voice, but this is not the language of the statute. *Compare* 47 U.S.C. § 227(b) *with* (Doc. 1 ¶ 27.) This allegation implies that a prerecorded voice was used at some point during the call. But this doesn't mean the call was initiated with a prerecorded voice. The complaint also alleges that the caller was making a "recorded call." (Doc. 1 ¶ 27.) But this could mean that the *call* was recorded, not the *caller*. Of course, Shelton's allegations would be entitled to a presumption of truthfulness with all reasonable inferences drawn to him on a 12(b)(6). But in a 12(b)(1) making a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations" and the "burden of proof [is] on the plaintiff to show that jurisdiction does in fact exist." *Mortensen*, 549 F.2d at 891. In order to do so, Shelton must produce the audio recording he made of this call. If Shelton refuses, this should be viewed in a negative light for standing purposes. *See Gould,* 220 F.3d at 177 (on a 12(b)(1) a district court may "weigh and consider evidence outside of the pleadings.")

Without an offending call, Shelton lacks standing to sue and this Court lacks subject matter jurisdiction. Given Shelton's history of questionable litigation, it's critical for standing issues to be settled now, before Shelton causes any further waste of party and judicial resources. If Shelton is unable to meet his burden to establish an offending call this complaint should be dismissed with prejudice.

> **D.   Even if a Call Was Made Shelton Lacks Standing to Sue Under Third Circuit Precedent as Shelton Lacks a Legitimate Article III Injury**.

Congress' intention in passing the TCPA was to "protect consumers from the proliferation of intrusive, nuisance, calls to their homes." *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 797 (W.D. Pa. 2016). Like all well-meaning public policy, the TCPA create unintended consequences Congress didn't foresee, including the proliferation of professional litigants who abuse the TCPA for profit, and often through fraud. After years of abuse, courts nationwide are recognizing that, "TCPA suits have, in many instances, been abused by serial litigants; and going forward each such case merits close scrutiny on the issue of standing in light of Spokeo." *Morris v. Unitedhealthcare Ins. Co.*, E.D. Tex. No. 4:15-CV-00638-ALM-CAN, 2016 WL 7115973, at *6 (Nov. 9, 2016). EDPA Courts have repeatedly recognized that Shelton is a "serial plaintiff" thus his standing to sue for, curiously never-ending, TCPA violations merits close scrutiny. *See Shelton v. FCS Capital LLC*, Case No. 2:18-cv-03723-JDW, 2019 WL 6726404, at *1, (E.D. Pa. Dec. 11, 2019).

Both the Third Circuit and Pennsylvania District Courts lead the nation in distinguishing legitimate TCPA consumers from professional plaintiffs who clearly are not injured by the calls they seek and enjoy. In *Leyse v. Bank of America,* the Third Circuit affirmed dismissal of a professional plaintiff's TCPA claims for lack of standing. *Leyse v. Bank of Am. N.A.*, 856 F. App'x 408 (3d Cir. 2021) (not precedential). There, Leyse sued Bank of America for calling his

residential phone line with a prerecorded message. *Id.* at 408-09. At the time of the call, Leyse worked as an "investigator" for a TCPA attorney, "helping [the attorney] prepare TCPA lawsuits." *Id*. During the calls, Leyse withheld his true purpose for speaking with the caller, "secretly recorded" the caller, and kept the recordings, "to use in TCPA lawsuits such as this one." *Id.* The Third Circuit looked to *Spokeo*'s guidance, recognizing, "there are some circumstances where the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact." *Id.* at 410 (quotation omitted).

The facts are strikingly similar here. Shelton runs a TCPA "business" and regularly works with other professional plaintiffs and TCPA attorneys. Like *Leyse,* Shelton did not take the commonsense approach of asking a caller to stop calling. Instead, Shelton withheld his true purpose for speaking with the alleged caller, feigned interest in the caller's cause, and apparently recorded the call for use in a premeditated lawsuit. Like Leyse, Shelton collects and encourages calls true consumers would find unwanted because it's profitable. *See* ECF 1 (Complaint) ¶ 30 (Shelton making false donations which fool callers into believing Shelton consents to future calls.) Even assuming Shelton was called, Shelton's history of deceptively manufacturing class action lawsuits where no valid claim existed distinguishes him from ordinary TCPA consumers. *See* Ex. C to Kane Decl.

Citing *Leyse*, the Western District of Pennsylvania found that a professional plaintiff did not "suffer an injury-in-fact" even though the plaintiff received TCPA violating calls which would have injured a genuine consumer. *Stoops v. Wells Fargo Bank, N.A*., 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016). The Western District found that the TCPA violating calls, "did not adversely affect the privacy rights that [the TCPA] is intended to protect" because Stoops was a professional plaintiff. *Id.* at 800. In other words, even though the calls violated the TCPA, Stoops

12

lacked standing to sue for them because, to Stoops, the calls "did not constitute the nuisance, invasion of privacy, cost, and inconvenience, from which Congress intended to protect consumers." *Id.* The *Stoops* court's nuanced and individual injury analysis is precisely what the Supreme Court commanded in *Spokeo*. In *Spokeo*, the High Court clarified that, "[f]or any injury to be particularized, it must affect the plaintiff in a **personal and individual way.**" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (emphasis added). In other words, if one plaintiff's injury is another plaintiff's ecstasy, only one of them has standing to sue.

The Western District of Pennsylvania held, "it is unfathomable that Congress considered a consumer who files TCPA actions as a **business** when it enacted the TCPA" *Stoops*, 197 F. Supp. 3d at 805 (emphasis added.) The Eastern District of Pennsylvania has recognized that, "James Shelton has turned the private right of action under the TCPA into a **business**." *Jacovetti,* Case No. 2:20-cv-00163-JDW at 2 (emphasis added.) Therefore, it is "unfathomable" that Congress considered individuals like Shelton "when it enacted the TCPA." This is common sense. Both Congress and the American public are weary of those who abuse our overworked legal system for profit. No one believes that Congress passed bi-partisan legislation so professional litigants like Shelton could deceive unsuspecting callers and "pillage" them (synonyms rob, loot, plunder, raid, and *steal*).[6]

If the Court follows *Stoops'* and *Leyse's* thoughtful holdings, it should dismiss Shelton's lawsuit for lack of standing. Furthermore, while the Supreme Court has not directly addressed

---

[6] An earlier, precedential, decision in *Leyse* held that, "someone with a generalized interest in punishing telemarketers [] would not" have a "particularized injury required to maintain an action in federal court." *Leyse*, 804 F.3d at 323. Shelton, who proclaimed that the "point" of his lawsuits is "pillaging" his victims has (at best) demonstrated that he has nothing but a "generalized interest in punishing" others. He therefore lacks standing to sue under Third Circuit precedent.

this issue in the context of the TCPA, *Spokeo* is transcendent and clear. Article III courts are courts of limited jurisdiction. There mere existence of a statutory right does not automatically confer standing. Standing requires an injury that is both "concrete and particularized." *Spokeo,* 578 U.S. at 334. The High Court clarified that a "concrete" injury must be "*defacto*, that is, it must actually exist." *Id.* at 330 (quoting Black's Law Dictionary 479 (9th ed. 2009)). Despite their profitable protestations otherwise, the injury claimed by professional plaintiffs like Shelton simply doesn't exist. Furthermore, the idea that a professional plaintiff can turn a statutory right into a "business" and still claim a genuine and "concrete" injury is precisely the kind of "abstract" theory that *Spokeo* rejects. *See Jacovetti Law, P.C.,* 2020 WL 5211034, at *1.

      Defendant anticipates that Shelton will argue he is distinguishable from Stoops and Leyse. Afterall, the Plaintiff in *Leyse* refused to allege any harm besides a statutory violation. *Leyse*, 856 F. App'x at 410. Likewise, Stoops' lawsuit was dismissed because she "said the quiet part out loud" and admitted to manufacturing lawsuits. Shelton will likely argue that, because he has not publicly proclaimed the obvious, *i.e.* that he secretly enjoys when his phones ring, he is distinguishable from Stoops and Leyse. But this argument too gives away the game. Shelton is far too sophisticated to admit he isn't injured. In reality, the only factor distinguishing plaintiffs like Shelton from plaintiffs like Stoops and Leyse is the latter are simply more forthcoming. Eventually, Stoops and Leyese couldn't bring themselves to keep up the charade and are ultimately victims of their own candor. For example, Stoops admitted she wanted to "manufacture lawsuits." Shelton likely won't admit to doing this, even though Comcast caught him doing just this, and through a pattern of dishonesty. There is no equitable reason that Stoops should be treated less favorably than Shelton for doing the same thing. Courts can and should

14

weigh the credibility of professional plaintiffs and need not rely on the rare slip of candor to dismiss their claims when appropriate. *Gould Elecs.*, 220 F.3d at 177.

In conclusion, the facts are clear that Shelton runs a "business" and a dubious one at that. He clearly is not injured by calls that would injure others and, depending on the contents of Shelton's apparent audio recording, may not have received a prerecorded call at all. Given *Spokeo,* the Court should dismiss Shelton's lawsuit with prejudice per Rule 12(b)(1).

## II. DEFENDANT'S 12(B)(6) MOTION TO DISMISS

The Court should dismiss Shelton's entire Complaint for lack of subject matter jurisdiction. In the alternative, Shelton's request for treble damages and a federal injunction should be dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

### A. Legal Standards

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. However, the court is not required to accept as true legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678.

The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully; it demands enough factual content for the court to infer more than the mere possibility of misconduct. *Id*. at 679.  While detailed factual allegations are not required, the

plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. If the allegations in the complaint are insufficient to raise a right to relief above the speculative level, dismissal is appropriate. *Id*.

      **B.**      **The Complaint's Request for Treble Damages and Request for an Injunction Should Be Dismissed With Prejudice**

The Court should dismiss Shelton's request for treble damages and frivolous request for a federal injunction with prejudice.

      **1.**      **The Court Should Dismiss' Shelton's Implausible and Threadbare Claim for Treble Damages with Prejudice.**

The TCPA authorizes treble damages but only if "the court finds that the defendants willfully or knowingly" violated the TCPA. *See* 47 U.S.C. § 227(b)(3). Professional plaintiffs believe they are automatically entitled to treble damages anytime they're allegedly called, but this is not accurate. Here, Shelton's complaint doesn't even plead a cognizable claim for treble damages, and it should therefore be dismissed. To pass muster under *Iqbal* and *Twombly,* a plaintiff must provide "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Shelton's threadbare complaint leaves the Court with nothing but "formulaic recitations" to support his claim for treble damages. Indeed, Shelton's complaint only says, "Defendant's violations were negligent, willful, or knowing" and nothing more. ECF 1 (Complaint) ¶ 58. This is not enough.

Plaintiff chose not to explain how a single call made to one of his many phone numbers was a willful or knowing violation sufficient to award treble damages. Indeed, given Shelton's TCPA business, it simply isn't plausible that anyone, outside of his friends and family, wants to willfully or knowingly call James Shelton. Crucially, Shelton's own complaint doesn't provide any explanation why Defendant, who Shelton admits to deceiving, willfully or knowingly called him. ECF 1 (Complaint) ¶ 32-33.

16

Shelton's lawsuit only alleges a single call. To the extent Shelton argues there were subsequent calls,[7] he can hardly claim that such calls were "willful" and "knowing" TCPA violations after Shelton chose to donate $55 to the alleged caller (rather than being honest and asking the caller to stop calling.) ECF 1 (Complaint) ¶ 30. Courts within the Third Circuit hold that "willful or knowing conduct is a separate element" of a TCPA claim that must be pled with specific facts to "survive a motion to dismiss." *See Arcieri v. Suntuity Solar Ltd. Liab. Co.*, No. 20-16292 (FLW), 2021 U.S. Dist. LEXIS 186205, at *22 (D.N.J. Sep. 27, 2021) (collecting cases); *Zelma v. Conway*, Civil Action No. 2:12-cv-00256 (DMC) (JBC), 2013 WL 6498548, at *2 (D.N.J. Dec. 11, 2013) (dismissing plaintiff's treble damages claim under the TCPA because "Plaintiff has not provided any plausible factual allegations in his Amended Complaint to demonstrate that any of the Defendants acted willfully and knowingly as required.")

Similarly, District Courts within the Third Circuit have dismissed treble damages claims when a complaint contains, "nothing more than a conclusory regurgitation of the statutory standard, which is not entitled to the assumption of truth on a motion to dismiss." *Arcieri*, 2021 U.S. Dist. LEXIS 186205, at *28. Shelton's lawsuit contains only a single sentence to support his claim for treble damages which is precisely the kind of "conclusory regurgitation" which does not pass muster. *See id.*

Furthermore, Shelton's claim for treble damages should be dismissed with prejudice. Given the undisputed facts, any amendment here would be "inequitable and futile." *See Zelma*, 2013 WL 6498548, at *2. Shelton's own complaint only alleges that he was called once and that

---

[7] Shelton would lack standing to sue for any follow up calls as his dishonest pledge acted both as express consent to future calls and established an existing business relationship. *Dobronski v. Total Ins. Brokers*, No. 21-10035, 2021 WL 4452218, at *3-4 (E.D. Mich. Sept. 29, 2021) (plaintiff "engaged in conduct designed to encourage the second call" gave "implied consent" and lacked standing to sue.)

17

during this call he chose to make a false pledge rather than simply asking the alleged caller to stop calling. Given Shelton's well documented TCPA antics, any amendment here would be futile.

Finally, allowing Shelton to amend his threadbare pleading would be "inequitable." Shelton is a "serial plaintiff" represented by two experienced TCPA plaintiff's attorneys. Shelton's stated purpose in bringing these lawsuits is to "pillage" his victims. Shelton is a TCPA expert and should be treated as such. As a seasoned litigant and subject matter expert, Shelton should not, "get the benefit of the Court's dispensation of sticking strictly to the rules." *Laccinole v. Int'l Union of Police Ass'ns*, 638 F. Supp. 3d 110, 114 (D.R.I. 2022). Shelton knew that he bore the burden to sufficently plead all of his claim's essential elements but chose not to. The costs of this failure should only be borne by Shelton. Indeed, as Shelton only alleges a single violating call this case is worth, at most, $500. Given the low value of this case, it is inequitable to Defendant and the public to bear the costs of allowing Shelton to try and convert his $500 lawsuit into a $1,500[8] lawsuit. Indeed, there is a strong public policy reason for requiring professional TCPA litigants to "stick strictly to the rules" as it deters them from filing weak or meritless claims. *See infra* (discussing Shelton's legally frivolous request for a federal injunction.)

      **2.**      **The Court Should Dismiss Shelton's Frivolous and Incoherent Request for a Federal Injunction.**

---

[8] To the extent Shelton claims the value of this case is higher than $500 due to his flimsy "failsafe" class allegations he is mistaken. Shelton has a well-documented history of devising fraudulent schemes to manufacture class actions. Thus, Shelton is not capable of being a class representative. *See Supra*. Finally, as a professional TCPA litigant engaged in a "business" his claims are not typical of the claims of other potential class members. Despite Shelton's styling of this case as a class action it is worth, at most, $500.

Shelton's complaints are cut and paste templates designed to extort quick settlements, not state valid legal claims. This is epitomized by Shelton's legally frivolous, and indeed incoherent, request for a federal injunction against Defendant from "making telemarketing calls to numbers on the National Do Not Call Registry." ECF 1 (Complaint) ¶¶ 55, Prayer for Relief. Shelton's complaint only states one cause of action under § 227(b). Subsection (b) prohibits certain calls made using proscribed technologies such as prerecorded or artificial voices. By contrast § 227(c) prohibits calls to number registered on the National Do Not Call Registry ("DNCR"), regardless of the technology used. *Compare* 47 U.S.C. § 227(b) *with* 47 U.S.C. § 227(c). The problem with Shelton's request for a federal DNCR injunction is that Shelton didn't bring a DNCR claim. Meaning his request for a federal DNCR injunction is legally frivolous.

Shelton's complaint only states one dubious claim for violations of § 227(b). Yet, his complaint also asks this Court to issue a federal DNCR injunction, apparently for a DNCR claim that Shelton himself didn't see fit to bring. This Court has recognized that Shelton, "can fairly be called a serial [TCPA] plaintiff." *See FCS Capital LLC,* 2019 WL 6726404, at *1. Shelton either knew or should have known that § 227(b) claims have nothing to do with the DNCR and that he had no good faith basis in either fact or law to request a federal DNCR injunction. Shelton's request for an injunction should therefore be dismissed with prejudice.

### III.   CONCLUSION

In conclusion, the Court should dismiss Shelton's complaint with prejudice per Rule 12(b)(1) or, in the alternative, dismiss Shelton's request for treble damages and request for a federal injunction per Rule 12(b)(6).

Respectfully submitted on November 25, 2024.

**THE BERNHOFT LAW FIRM, S.C.**
Attorneys for Defendant

19

/s/ Patrick Kane
Patrick Kane, Esq.

1710 W. 6th Street
Austin, TX 78703
Telephone: (512) 582-2100
Facsimile: (512) 373-3159
ptkane@bernhoftlaw.com


**DUANE MORRIS LLP**

Daniel R. Walworth (PA #204968)
Aleksander W. Smolij (PA #329521)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1194
Fax: (215) 405-2917
dwalworth@duanemorris.com
awsmolij@duanemorris.com