## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. SHELTON, individually and on behalf of all others similarly situated, <br><br> Plaintiff/Counter-Defendant, <br>      v. <br><br> COMMITTEE FOR POLICE OFFICERS DEFENSE PAC <br><br> Defendant/Counter-Plaintiff. | Case No. 24-4679 <br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S MOTION AND BRIEF IN SUPPORT OF MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

### INTRODUCTION

Defendant Committee for Police Officers Defense PAC's ("CPOD" or "Defendant") Counterclaim against the Plaintiff for the Plaintiff consensually recording a robot, in compliance with Pennsylvania state law, is an attempt to intimidate and bully a consumer for daring to hold it to account for its illegal telemarketing. Because Defendant has not suffered a cognizable injury in fact, not least of which because Mr. Shelton's actions did not violate and in fact were in full compliance with Pennsylvania's Wiretapping and Electronic Surveillance Control Act, Defendant's sole counterclaim, for violations of WESCA, must be dismissed under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### LAW AND ARGUMENT

I.  **CPOD fails to allege an injury-in-fact under WESCA and therefore lacks standing to assert a WESCA claim, warranting dismissal under Rule 12(b)(1).**

CPOD's counterclaim should be dismissed for lack of standing. To have standing, a plaintiff must (1) have suffered an injury-in-fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision. *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, Plaintiff raises both facial and factual challenges to CPOD's standing on the basis that it has not suffered an injury in fact under WESCA for at least four independent reasons. *First*, uncontroverted extrinsic evidence, including extrinsic evidence *proffered by the Defendant* indicates that both the Plaintiff and Defendant's robot stated that the call was being recorded, thus satisfying WESCA's consent requirements. *Second*, Plaintiff recorded the call for the purposes of enforcing his rights under the TCPA, which is an express exception to WESCA. *Third*, the Plaintiff did not use an "electronic, mechanical or other device" to record the call because he used his telephone's recording functionality to record the call. *Fourth*, and finally, Defendant lacks Article III standing, as a fictitious entity without a constitutionally-recognized harm, to assert a WESCA claim as if anyone has been injured, it is Defendant's *employee*, not the Defendant.

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled in this circuit. There exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Here, Plaintiff submits an affidavit in order to support his contention that the defendant has not been injured, that he has committed no WESCA-violative conduct and thus that such conduct is not "fairly traceable" to him, let alone capable of redress. *Lujan*, 504 U.S. at 560. (Shelton Dec.). In so doing, he mounts a factual challenge, although this Court may freely construe some arguments as a facial challenge in the alternative. In a factual challenge, as here, this Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This Court may consider submissions by the parties–such as witness declarations like the one submitted by Mr. Shelton, as well as the actual audio files of the recordings at issue–that are relevant to the issue of subject matter jurisdiction without

converting this motion to one for summary judgment under Rule 56(c). Moreover, a factual challenge under Rule 12(b)(1) involves a unique type of burden shifting. Once the moving party, here the Plaintiff/Counter-Defendant, raises a 12(b)(1) challenge, and introduces evidence tending to show that the court lacks jurisdiction, including through affidavit, the burden shifts to the nonmoving party to demonstrate the existence of subject matter jurisdiction. *Id.* In other words, CPOD necessarily bears the burden of proof that jurisdiction does in fact exist, including through evidence of its own. *Id.*

And here, there are at least four independent reasons why the Defendant's WESCA claim fails. There can be no mistake as to what CPOD does here, turning a textbook example of a consumer enforcing their statutory rights into a counterclaim for activity expressly authorized by the statute on which CPOD sues.

   a.  *Uncontroverted evidence demonstrates that consent was obtained to record the call.*

In support of its counterclaims, Defendant has attached a copy of the transcript of the call. (ECF No. 35-2). In relevant portion, that transcript states:

Robot "Tom": Sir, the reason *for the recorded call* is that the 527 PAC which backs the rights of our law enforcement officers has started its fund drive, and it's reaching out to everyone in the area.

James Shelton: What's called, a recorder?

As is readily apparent from the transcript, at the outset of the call, the Defendant's own robot *informed the Plaintiff that the call was being recorded* by stating that it was a "recorded call." Moreover, as Mr. Shelton's declaration reveals, as supported by the recording of the call submitted as Exhibit 2 in this matter, the transcriptionist mis-transcribed this portion of the call

because he was talking over the robot, and Mr. Shelton can clearly be heard stating "This call is being recorded." What's more, the recording also reflects periodic "beep" warning tones indicating the call is being recorded. The call nevertheless continued, with the robot transferring the call to a human who took down the Plaintiff's information and further identified itself. Plaintiff therefore mounts a factual challenge to the Defendant's WESCA claim in this regard, as it is readily apparent that all parties to the call consented to the instant recording.

WESCA contains an all-party consent exception, under which it is not unlawful for someone to "intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception." 18 PA. CONS. STAT. § 5704(4). Thus, if someone consents to the interception of their communications, the WESCA does not impose liability. "Pennsylvania courts have repeatedly interpreted the consent provisions of WESCA as establishing an objective standard—looking to whether a reasonably prudent person can be deemed to have consented under the circumstances." *Popa v. Harriet Carter Gifts, Inc.*, No. 2:19-CV-450, 2025 WL 896938, at *5 (W.D. Pa. Mar. 24, 2025).

Actual knowledge of the fact that a call is being recorded is not required under the mutual consent provisions of WESCA. *Comm. v. Byrd*, 235 A.3d 311, 319 (Pa. 2020). As our Supreme Court explained in *Byrd*, "'Prior consent' can be demonstrated when the person being recorded 'knew or should have known, that the conversation was being recorded.' This standard is one of a reasonable person, and not proof of the subjective knowledge of the person being recorded as Appellant advocates." *Id.* (quoting *Comm. v. Diego*, 119 A.3d 370, 377 (Pa. Super. 2015)). In *Byrd*, the Court went on to explain that "[T]he standard is the objective knowledge of a reasonably intelligent person following the warning that the call 'may be monitored or recorded.' After receiving such warning, proceeding to speak into the receiver is consent by conduct and

therefore, the recording of such interceptions are not unlawful." *Id.* (cleaned up).

Given that the Defendant itself stated that the call was a "recorded call," that the Plaintiff himself stated "this call is being recorded," and the recording of the call indicates that periodic recording beep tones were played to further illustrate the fact the call was recorded, there can be no question that a reasonably prudent person would have been put on notice that the call was being recorded and impliedly consented to such recording by continuing with the call without objection. *Popa*, 2025 WL 896938, at *7. Indeed, as will be explained below, in reference to WESCA's exception for recording calls to enforce the TCPA, as here, as well as the discussion of standing, a reasonably prudent *telemarketer* has a lower expectation of privacy than two individuals speaking by telephone and having an ordinary conversation. *Id.* There can be no question that the uncontroverted extrinsic evidence adduced here, and permitted to be adduced here, warrants dismissal as the Defendant has suffered no injury-in-fact as it is plain that WESCA was not violated because any recording was made with the consent of all parties.

b.  *Plaintiff's conduct is expressly exempted by WESCA's plain text.*

WESCA also contains a TCPA exception, under which it is *not unlawful* for:

A person to intercept the wire communications of a telemarketer, telemarketing business or an individual or entity that initiates robocalls, as those terms are defined in section 2 of the act of December 4, 1996 (P.L.911, No.147), known as the Telemarketer Registration Act, provided that the person who received the telephone call has consented to the interception, for purposes of enforcing any of the following:

(i)  47 U.S.C. § 227 (relating to restrictions on use of telephone equipment).

(ii)  The act of December 17, 1968 (P.L.1224, No.387), known as the Unfair Trade Practices and Consumer Protection Law.

(iii)  The Telemarketer Registration Act.

18 Pa. Cons. Stat. § 5704(19).

Here, as Mr. Shelton's declaration makes clear, he recorded an "individual or entity that initiates robocalls" for the express purpose of enforcing 47 U.S.C. § 227(b)(1)(A)(iii) in this

federal class action TCPA lawsuit. (Shelton Dec. ¶ 8, 9). The Telemarketer Registration Act defines a "robocall" as "A telephone solicitation call made to a large number of people, using a computerized autodialer, to deliver a prerecorded telemarketing message." 73 P.S. § 2241(2). It is without question that the Defendant is an "individual or entity" that initiated a "robocall," as that term is defined in the Telemarketer Registration Act, as the recording itself was a "prerecorded telemarketing message," which explicitly said it was being sent to "everyone in the area," that is, a large number of people. And, unlike federal law, the Telemarketer Registration Act defines "telemarketing" to not only include the inducement of goods or services, but also to "solicit contributions for any charitable purpose, charitable promotion or for or on behalf of any charitable organization." *Id.*

Defendant may argue that a political contribution to a political action committee, as here, is not, strictly speaking, a "charitable purpose" under the Telemarketer Registration Act and that the call, strictly speaking, was not a "robocall," rendering the exception inapplicable. That would be a red herring argument that runs too far afield from the stated plain legislative intent and the text of WESCA itself. Indeed, such an argument would contravene the stated purposes of the General Assembly when it passed this very exception to WESCA in 2023. In so doing, the General Assembly intended to "permit potential victims of telephone scams to fight back by recording the calls", which, in a sponsor's words, " will level the playing field and give our citizens an opportunity to also record the tele-scammer to provide evidence. . . [y]ou have no recourse whatsoever to record that telephone call and provide evidence to law enforcement." Peter Hall, *Change to Pa. Wiretap Law Would Allow Consumers Targeted by Telemarketing Scams to Record Calls*, News From the States (Sept. 26, 2023), https://www.newsfromthestates.com/article/change-pa-wiretap-law-would-allow-consumers-

targeted-telemarketing-scams-record-calls.

Indeed, Defendant's *very own counsel* explained the impact of this 2023 amendment to

WESCA, noting:

> What this bill does is provide an exemption for a recipient of telemarketing or robocall to
> essentially wiretap their conversations with telemarketers. Why is this a big deal?
> Typically, PA is an all-party consent state. That means that all parties have to
> affirmatively consent to be recorded.  While PA will remain an all-party consent state for
> calls recorded, there is an exemption when it comes to telemarketing calls. This is
> absolutely an effort to enforce the PA telemarketing regulations along with the TCPA,
> Unfair Trade Practices, and Consumer Protection Laws.

Angelika Munger, *Pennsylvania PASSED A Bill Amending State Wiretapping Laws, What Does

This Mean For Telemarketers?,* TCPAWORLD (Dec. 15, 2023),

https://tcpaworld.com/2023/12/15/pennsylvania-house-bill-1278-has-passed-what-does-this-

mean-for-telemarketers/.

It is plainly apparent, therefore, that the General Assembly intended for consumers to be

able to record telemarketing calls with one party consent for the purposes of enforcing the TCPA,

driven partly out of concern that telemarketers were weaponizing WESCA's provisions, as here,

against consumers in an effort to cast doubt on allegations of their own illegal conduct.

In recording the call at issue here, the Plaintiff relied in good faith upon WESCA's

statutory exemption provision for *exactly these types of calls*. The counterclaims at issue here are

exactly those that the General Assembly sought to *prevent* when it passed the instant exception.

To condition the legality of a recording, after the fact, on whether or not a call did in fact violate

the TCPA or fell under the explicit text of the exemption and its definitions, would plainly

frustrate the General Assembly's intent. Indeed, a consumer will in most cases need to play along

with a telemarketer and its script to ascertain the purpose of the call and determine if it falls

under the exception or not. It would be incongruous to require a plaintiff to go halfway through

the call, only to realize that it is a call that can be recorded, and then start the recording.

Put differently, that a consumer may have recorded a call for the "purposes of enforcing . . . 47 U.S.C. § 227," but if the call did not violate that section, it does not change the fact that the good faith *purpose* of making the recording, ascertaining whether the statute was violated, was legally protected. Indeed, it is a defense to an action brought pursuant to WESCA that "the actor acted in good faith reliance on a court order or the provisions of this chapter." 18 Pa. Cons. Stat. § 5725(c). That Plaintiff was acting in good faith reliance on the instant exemption is plain from Mr. Shelton's declaration and the circumstances of this call and lawsuit. Even if the Plaintiff *technically* violated WESCA by recording a *political* telemarketing robocall (as opposed to a charitable one), he nevertheless made the recording, acting in good faith reliance on WESCA's provision permitting him to record such calls as a general matter for pursuing TCPA claims, among others. Thus, at the very least, this Court should determine that Mr. Shelton was nevertheless acting in good faith reliance on WESCA's telemarketing exception. No matter how the Court slices the issue, given that Mr. Shelton has declared that he made the recording at issue for the purposes of enforcing the TCPA and has actually submitted and used such recording for those same purposes, his actions were protected by WESCA's specific exception for the same.

   c. *Mr. Shelton used his phone's call recording functionality to record the call. Mr. Shelton therefore did not use an "electronic, mechanical or other device" under WESCA.*

WESCA prohibits using an "electronic, mechanical or other device" to "intercept" a communication. However, expressly *exempted* from the definition of an "electronic, mechanical or other device" is "*Any telephone or telegraph instrument*, equipment or facility, *or any component thereof*, furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business, or *furnished by such subscriber or*

*user for connection to the facilities of such service* and used in the ordinary course of its business." 18 PA. CONS. STAT. § 5702. (emphasis added) As Mr. Shelton's declaration states, he used his phone's call recording functionality to make a recording of the call. (Shelton Dec. ¶ 11). He did not, for example, use a tape recorder or a separate microphone. (Shelton Dec. ¶ 12).

Although the issue appears to be one of first impression in Pennsylvania, in considering similar language to WESCA, numerous courts have held that monitoring and recording devices which are part of telephone systems come squarely within the "telephone equipment" exception to wiretapping laws. *See, e.g.*, *Stalley v. ADS All. Data Sys., Inc.*, 997 F. Supp. 2d 1259, 1262 (M.D. Fla. 2014), *aff'd*, 602 F. App'x 732 (11th Cir. 2015) (telephone system that recorded calls fell under "telephone equipment" exception); *James v. Newspaper Agency Corp.*, 591 F.2d 579, 581 (10th Cir. 1979) (monitoring device installed by newspaper for customer service purposes was "telephone equipment"); *O'Sullivan v. NYNEX Corp.*, 687 N.E.2d 1241, 1244 (Mass. 1997) (recorder a telephone company attached to telephone lines was "telephone equipment").

By contrast, other types of telephone recording systems involving the attachment of external equipment, such as attaching a VCR to a telephone's microphone, *Williams v. Poulos*, 11 F.3d 271, 280 (1st Cir. 1993), or reel-to-reel tape recorder to a business telephone system, *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 738 (4th Cir. 1994), are not "telephones" or "instruments, equipment, or facilities, or components thereof," and thus constitute wiretapping devices. Unlike telephones themselves, externally-connected recording devices logically do not, in any way, "further" a "communications system." *Sanders*, 38 F.3d at 740.

Our Commonwealth's Supreme Court has already held that a cell phone is *not* an "electronic, mechanical or other device" and thus is *not* subject to WESCA's restrictions. In *Com. v. Spence*, a state trooper listened to a conversation between an informant and his drug

supplier while the informant's cell phone was on speakerphone. 91 A.3d 44, 45 (Pa. 2014). Our Supreme Court concluded that a cell phone, including one placed on speakerphone, plainly fit under WESCA's telephone equipment exception. As the Court concluded, the "cell phone over which the trooper heard the conversations between the arrestee and Appellee clearly was a telephone furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business.

So too here, where the Plaintiff used the cell phone he received the call on to record the call. "The language of the statute states that telephones are exempt from the definition of device; the language of the statute does not state that it is the **use** to which the telephone is being put which determines if it is considered a device." *Id.* at 47 (emphasis original). Because the recording was made using Mr. Shelton's cell phone on which he received the call at issue, it was made by a "telephone," under that plain exception to WESCA. As such, Mr. Shelton's action of having his phone record the call falls outside WESCA's scope because he did not use an "electronic, mechanical or other device" to record the call.

> d. *Defendant, the Committee for Police Officers' Defense PAC, lacks standing under WESCA.*

By its plain text, CPOD does not possess a cause of action under WESCA because it has not suffered an injury-in-fact for at least two interrelated reasons. *First*, the bare minimum procedural violation CPOD complains of here is insufficient to establish CPOD's standing after *TransUnion* because CPOD simply has no federally cognizable privacy or other interest in recordings of telemarketing calls that it placed *en masse* to permit it to sue for the instant WESCA claims in a federal counterclaim. *Second*, if anyone had some degree of standing, *arguendo*, it is CPOD's agent, who might arguably have an individual claim against Mr. Shelton.

Start with the second point first. WESCA provides a cause of action for "any person"

whose "whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter." Thus, the Committee for Police Officers' Defense, the Defendant here, did not have any of its "wire, electronic or oral communications" intercepted because *it, as a corporation,* made no "communications" on the call. It is self-evident that a Defendant's robot, as an inanimate object, possesses no legally cognizable privacy interest protected by WESCA, so under Article III, Defendant has not suffered a cognizable injury in fact with respect to the Plaintiff recording its robot. CPOD thus lacks standing to sue for the Plaintiff recording its robot, since only humans have privacy interests. Constitutional protections under Article III apply to people, not places (or their things *qua* things). *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of [Constitutional] protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."). This results in the absence of an injury-in-fact, let alone one capable of redress. With respect to the first part of the call, all Plaintiff did was record a recording. CPOD simply has no Constitutionally-recognized standing or cognizable privacy interest to complain of a recording's privacy violations for robocall calls it admits it places to the *general public*. Were that the case, any advertiser could sue any consumer who audio records an advertisement they played over the radio.

If any *person's* Constitutionally-recognized privacy interest was invaded at all, it would be CPOD's agent with whom Plaintiff spoke during the latter portion of the call. And with respect to the Plaintiff recording "CPOD's agent" (who is unidentified), it is *that agent* who (allegedly) did not consent to plaintiff recording the conversation. It is therefore (if anyone) *that agent* who has standing to sue, not CPOD. Again, the issue appears to be one of first impression, but it is clear from the plain and related definition of an "aggrieved person" under the Act, that

CPOD was, by its very admission, not a "party" to any intercepted communication, nor was it a "person against whom the interception was directed." 18 PA. CONS. STAT. § 5702. Just because the call was made to benefit CPOD and at CPOD's direction doesn't mean that CPOD has standing to sue for any violation. A contrary holding would lead to absurd results, potentially giving anyone whose name is even *mentioned* on a call or who stands to benefit from an intercepted communication a right to bring a WESCA claim. The General Assembly could not possibly have recognized such an absurd result. The (questionable) existence of a harm suffered by other parties who are not before the court does not provide standing to CPOD to obtain relief. *See Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).

In any event, the first point elucidated to at the beginning of this section remains that CPOD simply has no Article III standing for a WESCA claim in circumstances such as this, given the nature of the communication at issue. In *In re BPS Direct, LLC*, this Court dismissed a WESCA claim on Article III standing grounds under similar circumstances. There, consumers sued online retailers, alleging that the retailers' use of website tracking technology violated the consumers' rights under WESCA. 705 F. Supp. 3d 333, 345 (E.D. Pa. 2023). This Court dismissed the case, reasoning that, considering the "contents of the intercepted information," the plaintiffs alleged "nothing but a bare statutory violation – which is not enough to confer standing under *TransUnion*." *Id.* CPOD's statements on the instant calls similarly implicated no legally cognizable privacy interest of CPOD's or other form of harm divorced from the bare statutory violation (if any can be said to have been committed at all against CPOD), and, correspondingly, no harm for Article III standing purposes. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021). As Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: "What's it to you?" Antonin Scalia, The Doctrine of Standing as an Essential Element

of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983). *BPS Direct* counsels the correct answer: Nothing.

A review of the transcript of the call reveals that neither CPOD, its robot, or its agent shared any information which is "sufficiently private to establish concrete harm" to confer Article III standing in this federal forum on the state law wiretapping claims. *In re BPS Direct, LLC*, 705 F. Supp. 3d at 353. For example, in that case, the retailers simply captured browsing and shopping activity on their own website, which this Court held was "not sufficiently private to establish concrete harm." *Id.* So too here. The Plaintiff capturing a highly-illegal prerecorded call made to his cell phone, and others *en masse*, is similarly not sufficiently private enough to establish CPOD's Constitutionally recognized harm. CPOD cannot claim to have a Constitutionally recognized legal interest in any highly illegal prerecorded robocall communications it made (if any such "intercepted" "communications" are said to exist at all), when such communications were sent *en masse* to "everyone in the area" by CPOD's robot, in violation of the TCPA. Nor, for that matter, can the agent with whom Plaintiff spoke.

Indeed, the only arguably private information collected on the call–the Plaintiff's credit card information–was provided *by the Plaintiff* and recorded *by the Plaintiff*. Article III simply does not contemplate or permit a party to sue someone else for that other person's own injuries. *Lujan*, 504 U.S. at 560. ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."). Nor does Article III permit a claimant to adopt someone else's harm and pass it off as their own. *Id.* at 573-74 ("A plaintiff raising only a generally available grievance . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). If anyone was harmed by the recording or had their privacy interests invaded, it is Mr. Shelton, who received a disruptive

prerecorded robocall and provided his personal information to identify the caller. If anything, that gives Plaintiff a WESCA claim, not the other way around. CPOD has not suffered a federally-recognized injury-in-fact, and thus no harm for Article III standing purposes.

**II.    The Counterclaim must fail under Rule 12(b)(6) for similar reasons. WESCA is also federally preempted in circumstances here, further warranting dismissal.**

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

This matter should be dismissed under Rule 12(b)(6) for two reasons: *first*, for similar reasons to why this matter should be dismissed under Rule 12(b)(1), the counterclaim is ill-pled, does not establish all statutory requirements, and is unconstitutional as applied, warranting dismissal. *Second*, the Federal Wiretap Act preempts WESCA under all three types of federal preemption, particularly as CPOD deploys WESCA in the context of an affirmative TCPA claim.

   *a.    If this Court does not dismiss under Rule 12(b)(1), it can still dismiss under Rule 12(b)(6).*

Aside from the fatal threshold issues of standing discussed above, the Counterclaim is also ripe for dismissal on its face under Rule 12(b)(6) for failure to state a claim for nearly identical reasons. As explained above, CPOD's accusations in its Counterclaim do not come anywhere near meeting the WESCA's requirements, and multiple clear statutory exemptions apply. Because the call transcript is explicitly referenced in the Complaint, it may be considered

by the Court without converting the instant motion into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010). Even so, the Defendant turns WESCA's protections and the General Assembly's intent on its head, ignoring its own egregiously illegal conduct and suing Mr. Shelton for daring to hold CPOD to account for its illegal telemarketing and proving the same through the recording of the call. As explained above, that's activity which WESCA protects and encourages, not punishes. Given that the Plaintiff's activities plainly fall within at least three statutory exceptions and carveouts, those of consent, the TCPA exemption, and the fact that the Plaintiff recorded the call with his cell phone, this Court can dismiss under any of these three grounds, with prejudice, under Rule 12(b)(6).

CPOD's counterclaim does little more than parrot the language of WESCA while at the same time ignoring clearly applicable statutory exemptions and the necessity of pleading additional statutory requirements. Such conclusory allegations do not meet federal pleading standards, much less state a plausible claim for relief, particularly in light of the plainly applicable permissibility of the complained-of conduct. As such, CPOD has failed to allege a cognizable theory of liability under WESCA against Shelton, further warranting dismissal of its counterclaim. Even if CPOD could state a viable theory of WESCA liability against Mr. Shelton, and it clearly has not, its counterclaim is subject to dismissal under Rule 12(b)(6) because the complaint is ill-pled and lacks the factual allegations to establish a WESCA claim.

Most egregiously, the complaint does *not* plead whether or not Plaintiff used an "electronic, mechanical or other device," as required by WESCA, nor can it, because the Plaintiff used his cell phone, which is not an "electronic, mechanical or other device." Nor, for that matter, does it acknowledge the very fact that *CPOD* stated *it was recording the call* in the *very own evidence it attached to its counterclaim*, that the Plaintiff stated he was recording the call, or

any facts sufficient to establish anything other than the bare statutory violation here.

And, as applied here, CPOD's deployment of WESCA raises serious First Amendment concerns, further warranting dismissal. The Supreme Court has already ruled that WESCA's private right of action is unconstitutional as applied in circumstances such as here, when there is no reasonable privacy interest, particularly insofar as it provides a private right of action arising out of recordings of matters of public concern and general interest. *Bartnicki v. Vopper*, 532 U.S. 514, 534 (2001). "One of the costs associated with participation in public affairs is an attendant loss of privacy." *Id.* The Supreme Court's decision in that case applies equally here. Plaintiff has sued CPOD on a matter of public concern and general interest: that CPOD is sending highly-illegal prerecorded robocalls as part of its marketing efforts for its Political Action Committee. To impose liability on the Plaintiff for recording a call made to him and "everyone in the area" seeking funds for Defendant's political action committee raises a fundamental issue of free expression protected by the First Amendment, apropos of the discussion above of CPOD not having a cognizable privacy interest, would take a hatchet to the Plaintiff's well-established First Amendment protections. *Id.* In essence, permitting Defendant's counterclaim to proceed, even at the pleadings stage, would serve to effectively "remove the First Amendment shield from criticism of official conduct," or, at issue here, conduct conducted under color of law. *Id.*

These independent reasons further warrant dismissal under Rule 12(b)(6).

### b.  *Federal one-party consent law preempts WESCA*

Finally, federal law preempts WESCA on the subject of recording interstate telephone communications. Admittedly, the question of whether, and to what extent, federal law preempts WESCA and similar state wiretapping laws on the subject of interstate telephone communication is a matter of significant consternation and an unsettled question, but the weight of authority

favors Plaintiff on the issue, particularly given the circumstances here of the Plaintiff asserting a federal statutory claim arising out of interstate telephone communication. Under federal wiretapping law, only the consent of *one party* to a communication is required to consent to a recording. 18 U.S.C. §2511(2)(c). Of course, as the creator of the recording and a party to the call, Mr. Shelton consented to the recording, satisfying the federal requirement. It should also be noted that the telephone call was an *interstate* telephone call, with Mr. Shelton being located in Pennsylvania and CPOD being located in Virginia (or possibly some other state).

"[T]he Supreme Court recognized that federal preemption of state law can occur in three types of situations: (1) where Congress explicitly preempts state law, (2) where preemption is implied because Congress has occupied the entire field and (3) where preemption is implied because there is an actual conflict between federal and state law." *Pokorny v. Ford Motor Co.*, 902 F.2d 1116, 1120 (3d Cir. 1990). Here, Plaintiff argues that the federal wiretapping act explicitly preempts state law, on, in the alternative, because there is an actual conflict between federal and state law, and also because Congress has occupied the entire field, at least insofar as it concerns the creation of recordings of interstate wire communications for federal law enforcement purposes, as here. Start with explicit and implied/conflict preemption.

Here, WESCA, specifically as it pertains or purports to regulate recordings of interstate telephone communications made to obtain evidence of violations of federal law, "stands as an obstacle to the accomplishment to the full purposes and objectives of Congress." *Bansal v. Russ*, 513 F. Supp. 2d 264, 283 (E.D. Pa. 2007). To this end, "Certain provisions of the Pennsylvania Wiretap Act, 18 Pa.C.S. § 5701, et seq., are not consistent with the Federal Wiretap Act." *Id.* "As these provisions conflict and the state law would stand as an obstacle to federal law enforcement, federal officers participating in a federal investigation are not required to follow [WESCA]." *Id.*

Although *Bansal* addressed the propriety of federal agents wiretapping calls in the context of a federal *criminal* investigation, it applies with equal force here in establishing express, or at the very least, implied, preemption in the context of a Congressionally-authorized federal *civil* investigation. In the TCPA, Congress empowered private citizens, like Mr. Shelton, to investigate and bring private rights of action to enforce federal telecommunications law. Thus, as an initial matter, WESCA (at least prior to its inclusion of the TCPA exception) presented a significant obstacle to consumers seeking to enforce federal telemarketing law, lending credence to the idea that Congress intended to preempt such restrictions on obtaining such evidence, particularly because of the palpable conflict with state law.

WESCA also imposes evidentiary restrictions not present under federal law, thus effectively imposing a state evidentiary standard on the federal courts, in violation of the *Erie* doctrine and its progeny, including the Federal Rules of Evidence. As this Court has repeatedly held, "the Federal Wiretap Act thus preempts Pennsylvania's stricter statute," particularly when, as here, one is acting "under color of law" and investigating a violation of a federal statute. *United States v. Nikparvar-Fard*, No. CR 18-101-1, 2021 WL 4170615, at *7 (E.D. Pa. Sept. 14, 2021) And, of importance as to the admissibility of the recording at issue here, "so long as the information was lawfully obtained under federal law . . ., it is admissible in federal court despite a violation of state law." *United States v. Armocida*, 515 F.2d 49, 52 (3d Cir. 1975).

Congress also sought to completely regulate the subject of the legality of recording and intercepting interstate telephone communications when it passed the Federal Wiretap Act as part of the Omnibus Crime Control and Safe Streets Act of 1968, demonstrating field preemption. A court may find that federal law displaces state law on field preemption grounds "when the federal statutory scheme is sufficiently comprehensive to infer that Congress left no room for

supplementary regulation by the states." *Public Utility Dist. No. 1 of Grays Harbor Cty. Washington v. IDACORP, Inc.*, 379 F.3d 641, 647 (9th Cir. 2004). Applying that firmly rooted legal principle here, federal courts have determined that state wiretapping laws, including Pennsylvania's WESCA, are preempted by the Federal Wiretap Act. *In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1084 (N.D. Cal. 2011), *aff'd sub nom. Joffe v. Google, Inc.*, 729 F.3d 1262 (9th Cir. 2013), *amended and superseded on reh'g*, 746 F.3d 920 (9th Cir. 2013), *and aff'd sub nom. Joffe v. Google, Inc.*, 746 F.3d 920 (9th Cir. 2013).

In *Google*, the Court observed that the Federal Wiretap Act was "intended to comprehensively regulate the interception of electronic communications such that the scheme leaves no room in which the states may further regulate." *Id.* Such preemption is deeply rooted in federalism concerns, "In so regulating, Congress struck a balance between the right to the privacy of one's electronic communications against the ability of users to access communications technologies without fear of liability for inadvertent interception. State regulation acting in addition to the ECPA might serve to obscure the legislative scheme surrounding innovative communications technologies that Congress intended to clarify through the Act, or could serve to upset the fragile balance considered by Congress between those who transmit electronic communications and those who may inadvertently intercept those communications." *Id.* As the Court concluded, "the federal Wiretap Act preempts state wiretap statutory schemes." *Id.*

And yet another court has regarded the ECPA, of which the Federal Wiretap Act is a part, to be "comprehensive: it regulates private parties' conduct, law enforcement conduct, outlines a scheme covering both types of conduct and also includes a private right of action for violation of the statute." *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007) (citing *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1045–46 (9th Cir. 2001)). As such, it

is apparent "that Congress 'left no room' for supplementary state regulation." *Id.*

Contrary cases holding otherwise, that is, that federal statutes do not preempt WESCA, are distinguishable. For example, in *Lane v. CBS Broad. Inc.*, this Court held that there was no preemption for purposes of federal question jurisdiction, noted that preemption is a *defense*, and, in so doing, remanded the issue to state court. 612 F. Supp. 2d 623, 634 (E.D. Pa. 2009). Similarly, in *Kline v. Sec. Guards, Inc.*, the Third Circuit held that the National Labor Relations Act did not preempt WESCA claims on a decision confined to the facts of a collective bargaining agreement arising out of purely intrastate activity. 386 F.3d 246, 262 (3d Cir. 2004).

Nor does the Third Circuit's decision in *Popa v. Harriet Carter Gifts, Inc.*, necessitate a different result. 52 F.4th 121, 126 (3d Cir. 2022). Although the Third Circuit held that, in the specific circumstances there, the Wiretap Act did not preempt WESCA, that case is unlike this one in three key respects. *First*, this case arises out of federal law, and the recording was made in the context of investigating non-compliance with the same; the WESCA claims are counterclaims, unlike in *Popa*, where the WESCA claims were the cause of action. As such, the federal interests here weigh in favor of preemption and align this case more closely to *Bansal* and *Nikparvar-Fard*. *Second*, *Popa* was a case about intercepting *internet* communications, not interstate *telephone* communications, which are covered by much more comprehensive federal laws and regulations, including service requirements and tariffs. *Third*, this case poses questions of the impact of *interstate telephone* communications, which are governed by federal regulations, unlike *intra*state telephone communications or internet communications.

In sum, because the Plaintiff recorded the subject communications, legally, to enforce federal law, as he is legally authorized to do, this Court should find that federal preemption applies and dismiss the WESCA counterclaims under Rule 12(b)(6).

**CONCLUSION**

Defendant is evidently upset that the Plaintiff caught it red-handed, with a recording, making illegal calls using prerecorded voices. Under any measure, Plaintiff's actions in making that recording were permitted. The counterclaim should be dismissed with prejudice.

Dated: May 22, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

May 22, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com